**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JAMES G. McGRORY, Administrator of the Estate of MARY CLAIRE McGRORY, Deceased, Plaintiff,     v. THE PNC FINANCIAL SERVICES GROUP, INC.; THE PNC FINANCIAL SERVICES GROUP, INC. PENSION PLAN; THE ADMINISTRATIVE COMMITTEE OF THE PNC FINANCIAL SERVICES GROUP, INC. PENSION PLAN; and WILLIS TOWERS WATSON US LLC, as Plan Actuary and Agent of the Plan Administrator, Defendants. | : : : : : : : : : : : : |

Case No.

**COMPLAINT FOR VIOLATIONS OF THE**
**EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA")**

Plaintiff James G. McGrory, Administrator of the Estate of Mary Claire McGrory, Deceased, ("Plaintiff") by and through his undersigned counsel, brings this action against the above-named Defendants pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., and alleges as follows:

**I. NATURE OF THE ACTION**

1. This is an ERISA action brought on behalf of the Estate of Mary Claire McGrory ("the Estate") to recover retirement benefits wrongfully denied by the Defendants, to redress breaches of fiduciary duty, and to obtain statutory penalties for Defendants' failure to provide plan documents and information required by ERISA within the statutory timeframe.

2. Mary Claire McGrory ("Decedent") was born on December 21, 1955, and was employed as a Vice President by Continental Bank in Philadelphia, Pennsylvania, from approximately July 1973 through March 1993; nearly twenty years of service. She was a vested participant in retirement benefit plans maintained by Continental Bank and its successors.

3. Mary Claire McGrory passed away on April 8, 2025, in Philadelphia, Pennsylvania, without having commenced her pension benefits. The PNC Financial Services Group, Inc. Pension Plan, the successor plan to the Midlantic Retirement Plan, which was itself the successor plan to the Continental Bank pension plan,

had calculated that Decedent was entitled to a benefit with a lump-sum value of approximately $154,430.58 as of April 1, 2025, or a monthly single life annuity of approximately $1,195.10/month.

4.      The Defendants have denied all benefits to the Estate on the grounds that Decedent did not commence her benefit before her death and that no surviving spouse exists. Plaintiff contests this denial as inconsistent with ERISA's mandatory anti-forfeiture and benefit-protection requirements, as applied to the successive mergers and plan transfers through which the Decedent's benefit accrued.

5.      Additionally, Defendants failed to respond to multiple written document requests within 30 days as required by ERISA Section 104(b)(4) and Section 502(c)(1), 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1), entitling the Estate to statutory penalties of $110 per day per document for each document not timely provided.

6.      Plaintiff seeks: (a) payment of all accrued benefits to the Estate of Mary Claire McGrory; (b) appropriate equitable relief for breach of fiduciary duty; (c) statutory document penalties; and (d) attorneys' fees and costs.

## II. JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to ERISA Section 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331 (federal question jurisdiction).

8.      Venue is proper in this district pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Decedent resided in Philadelphia County, Pennsylvania at the time of her death, the Estate is administered in Philadelphia County, and a substantial portion of the events and omissions giving rise to this action occurred in this district.

## III. PARTIES

9.      Plaintiff James G. McGrory is the duly appointed Administrator of the Estate of Mary Claire McGrory. Letters of Administration were granted to James G. McGrory by the Register of Wills of Philadelphia County, Pennsylvania, File No. A1967-2025, on May 1, 2025. James G. McGrory is also the brother of the Decedent and served as Informant on the death certificate. He resides in Montgomery County, Pennsylvania.

10.     Defendant THE PNC FINANCIAL SERVICES GROUP, INC. ("PNC") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal offices located at 249 Fifth Avenue, 21st Floor, P1-POPP-21-B, Pittsburgh, Pennsylvania 15222. PNC is the Plan Sponsor of the PNC Financial Services Group, Inc. Pension Plan ("Pension Plan") and is the successor entity to Midlantic National Bank through a series of corporate mergers and acquisitions that are described herein. PNC is a fiduciary with respect to the Pension Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

11.     Defendant THE PNC FINANCIAL SERVICES GROUP, INC. PENSION PLAN (the "Pension Plan" or "Plan") is an employee benefit pension plan as defined by ERISA Section 3(2), 29 U.S.C. § 1002(2), established and maintained by PNC for the benefit of eligible employees and former employees. The Plan is a successor to the Midlantic Retirement Plan and, through successive mergers and plan transfers, is the repository of all pension obligations originally accrued under the Continental Bank pension plan. The Plan's Form 5500 for 2023 (Plan No. 002, EIN 25-1435979) was filed on October 10, 2024. The Plan's address for plan administration purposes is 249 Fifth Avenue, 21st Floor, P1-POPP-21-B, Pittsburgh, Pennsylvania 15222. The Plan is a party against which ERISA Section 502(a)(1)(B) claims for benefits may be asserted.

12.     Defendant THE ADMINISTRATIVE COMMITTEE OF THE PNC FINANCIAL SERVICES GROUP, INC. PENSION PLAN ("Administrative Committee") is the named fiduciary and Plan Administrator of the Pension Plan, appointed by the Chief Executive Officer of PNC pursuant to the Plan document, with the authority and responsibility to control and manage the operation and administration of the Plan. The Administrative Committee is a fiduciary within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). The Plan Administrator's mailing address is 249 Fifth Avenue, 21st Floor, P1-POPP-21-B, Pittsburgh, Pennsylvania 15222.

13.     Defendant WILLIS TOWERS WATSON US LLC ("WTW") is a professional services firm incorporated in Delaware with offices in the United States including at 200 North Warner Road, Floor 3, Suite 300, King of Prussia, Pennsylvania 19406. WTW served as plan actuary and agent for PNC in

3

connection with the Pension Plan, as reflected in the 2023 Form 5500 Schedule SB (actuary Thomas DeFilippo, enrollment No. 23-06419, employed by Willis Towers Watson US LLC, One PPG Place, Suite 1000, Pittsburgh, PA 15222). WTW received correspondence from Plaintiff directed to it on behalf of the Pension Plan and communicated on behalf of PNC in connection with Plaintiff's document requests. To the extent WTW exercised discretionary authority or control with respect to the Plan's assets or administration, WTW is a fiduciary within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

## IV. FACTUAL BACKGROUND

### A. Mary Claire McGrory's Employment and Plan Participation

14.     From approximately July 1973 through March 30, 1993, a period of approximately twenty years, Decedent was employed as a Vice President by Continental Bank in Philadelphia, Pennsylvania.

15.     During her employment with Continental Bank, Decedent was a participant in pension and retirement benefit plans sponsored by Continental Bank. Continental Bank was subsequently acquired by or merged into Midlantic National Bank, and its pension plan obligations were assumed by the Midlantic Retirement Plan. The Midlantic National Bank and its plan were subsequently acquired and the plan merged into the PNC Financial Services Group, Inc. Pension Plan through a series of corporate transactions.

16.     The Midlantic Profit Sharing Plan distribution statement dated July 15, 1993, confirms that Decedent was a participant in the Midlantic Profit Sharing Plan as of her termination of employment on March 30, 1993, and received a taxable distribution of $19,529.67 from that defined contribution plan.

17.     With respect to the defined benefit pension benefit accrued under the Midlantic Retirement Plan, the PNC Financial Services Group, Inc. subsequently confirmed in two separate benefit estimate statements that Decedent was "Vested" with a termination date of March 30, 1993, and that she had accrued a pension benefit under the Midlantic Retirement Plan that became part of the PNC Pension Plan: (a) A benefit estimate statement effective January 1, 2021, shows a Single Life Annuity of $813.88 per month and a Lump Sum of $156,047.90; and (b) A benefit estimate statement effective April 1, 2025, shows a Single Life Annuity of $1,195.10 per month and a Lump Sum of $154,430.58.

18. Neither benefit estimate statement discloses the underlying formula used to compute the benefit or identifies any provision of any plan document that would cause the benefit to forfeit upon Decedent's death without benefit commencement.

19. Decedent Mary Claire McGrory was never married. She died on April 8, 2025, without a surviving spouse and without having commenced her pension benefit.

20. Decedent was 69 years of age at the time of her death. Her Normal Retirement Date (NRD) under the Midlantic Retirement Plan was the first day of the month coincident with or next following the later of her 65th birthday (December 21, 2020, which would have given rise to an NRD of January 1, 2021) or the fifth anniversary of her date of employment. Decedent had more than five years of service. Accordingly, her Normal Retirement Date was January 1, 2021. She did not commence her benefit by that date or at any time prior to her death in April 2025.

**B. Plan Succession History**

21. Continental Bank maintained a defined benefit pension plan for the benefit of its employees, including the Decedent.

22. Continental Bank was acquired by or merged with Midlantic National Bank (also known as "Midlantic Bank" or "Midlantic"). As a result of this transaction, Continental Bank's pension plan obligations were assumed by and merged into the Midlantic Retirement Plan.

23. The Midlantic Retirement Plan was a defined benefit pension plan established as of December 31, 1951, and subsequently amended through at least December 20, 1990. Section 1.09 of the Midlantic Retirement Plan names Midlantic National Bank as the "Company," which is defined to include Affiliated Companies that have adopted the Plan.

24. Section 1.12 of the Midlantic Retirement Plan confirms that "Credited Service" includes periods of Service with a predecessor corporation of the Company or any corporation merged, consolidated, or liquidated into the Company or its predecessor.

25. Article XI, Section 11.05 of the Midlantic Retirement Plan provides an anti-cutback merger protection: "In the case of any merger or consolidation with, or transfer of assets or liabilities to any other

plan ... the benefit which would be payable for each Participant or Beneficiary in the event of a plan termination occurring immediately after any such merger ... shall be at least equal to the benefit which would have been payable for such Participant or Beneficiary in the event of a plan termination immediately before such merger."

26.    Midlantic National Bank was subsequently acquired by PNC Bank, N.A. (then known as Pittsburgh National Corporation, or a successor entity of The PNC Financial Services Group, Inc.).

27.    The Midlantic Retirement Plan was merged into the PNC Financial Services Group, Inc. Pension Plan.

28.    Under ERISA Section 208, 29 U.S.C. § 1058, a pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan unless each participant in the plan would, if the plan then terminated, receive a benefit immediately after the merger which is equal to or greater than the benefit the participant would have been entitled to receive immediately before the merger.

29.    The 2023 Form 5500 for the PNC Financial Services Group, Inc. Pension Plan confirms that the Plan covers 118,122 participants and carries total pension assets of approximately $5.633 billion as of December 31, 2023. The actuarial valuation as of January 1, 2023 confirms that the Plan's funding target attainment percentage was 97.57%, and that the Plan carries benefit obligations for 24,734 retired or terminated vested participants receiving payment and 36,289 terminated vested participants entitled to future benefits.

30.    Decedent's benefit was confirmed by PNC as being attributable specifically to the Midlantic Retirement Plan as of her 2021 and 2025 benefit estimate statements. The benefit statements are captioned "PNC Pension Plan, Statement of Estimated Pension Benefits" and state: "[W]e have calculated an estimate of your Midlantic Retirement Plan benefit which is now part of the PNC Pension Plan."

**C. Plaintiff's Document Requests and Defendants' Failures to Respond**

31.    Following the Decedent's death on April 8, 2025, James G. McGrory, Decedent's brother, was appointed Administrator of her Estate by the Register of Wills of Philadelphia County, Pennsylvania, by Letters of Administration dated May 1, 2025 (File No. A1967-2025).

32.    Plaintiff retained the undersigned legal counsel to pursue the Estate's entitlement to retirement benefits.

33.    On August 11, 2025, Plaintiff, through counsel, sent a formal written request via Certified Mail to (a) The PNC Financial Services Group, Inc., Plan Administrator, PNC Financial Services Group, Inc. Pension Plan, 249 Fifth Avenue, 21st Floor, P1-POPP-21-B, Pittsburgh, PA 15222; (b) PNC, Inc., Plan Administrator, PNC, Inc. 401(K) Retirement Plan, 117 East Mason Street, Polo, IL 61064 (later resolved to be a separate, unrelated entity); and (c) WTW, 200 North Warner Road, Floor 3, Suite 300, King of Prussia, Pennsylvania 19406. The letter identified Decedent's Continental Bank employment from July 1973 through March 1993 and formally requested, with enclosures of the death certificate and Letters of Administration, the following nine categories of plan documents and information:

(1) Plan names and account numbers;

(2) Current account balances and/or accrued benefits;

(3) The status of any life insurance or survivor benefits;

(4) The latest updated Summary Plan Description(s) (SPD);

(5) The Plan documents themselves;

(6) The latest Plan annual reports, any terminal report, and any other instrument under which the Plan(s) operate;

(7) A current ERISA-compliant Benefit Statement for all benefits payable to the Decedent, the Estate, or designated beneficiaries;

(8) All other documents and information needed to determine the Decedent's benefits entitlement and the entitlement of the Estate and/or designated beneficiaries; and

(9) The name and contact information for all applicable Plan Administrators.

34.    Under ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), and Section 502(c)(1), 29 U.S.C. § 1132(c)(1), the plan administrator was required to respond to each of these requests within 30 days. The 30-day deadline for the August 11, 2025 request expired on September 10, 2025.

35. WTW responded by email on September 23, 2025, stating only: "We acknowledge receipt of your request ... We have taken instructions from our client, PNC, who have assured us that they will respond to your request directly in due course." WTW provided no documents and no substantive response.

36. PNC, Inc. of Polo, Illinois, responded on August 28, 2025, clarifying that it was a separate, unrelated manufacturing entity that had never employed the Decedent. Plaintiff's counsel acknowledged this response and confirmed on August 29, 2025, that PNC, Inc. of Polo, Illinois, is separate and distinct from The PNC Financial Services Group, Inc./PNC Bank.

37. The PNC Financial Services Group, Inc. Pension Plan and its Administrative Committee made no substantive response to the August 11, 2025 requests within the 30-day deadline.

38. On September 24, 2025, Plaintiff sent a follow-up letter via Certified Mail to The PNC Financial Services Group, Inc. Pension Plan Administrator, noting the failure to respond to the August 11, 2025 letter and demanding the requested information and materials without further delay. This constituted a second formal written request for the same plan documents.

39. On October 15, 2025, Josephine Pitta, VP, Supervisor Benefits Administration, PNC HR Benefits Administration, transmitted via secure email a partial response that included: (a) a copy of the 2024 Annual Funding Notice; (b) the benefit estimate statement effective January 1, 2021; (c) the benefit estimate statement effective April 1, 2025; (d) a document captioned "Mary Claire McGrory Information Request"; (e) the Midlantic Pension Plan Document; (f) the Midlantic Plan SPD; (g) the PNC Pension Plan SPD (2025); and (h) the Midlantic account statements from 1992 and 1993. This response indicated a copy to George H. Baer, an administrator of the PNC Pension Plan.

40. Despite this partial response, Defendants failed to produce the following documents that were requested and are required to be furnished under ERISA:

    a.   The PNC Financial Services Group, Inc. Pension Plan document itself (as distinct from the SPD);

    b. The Continental Bank Pension Plan document (the predecessor plan);

    c. The Plan's Annual Report (Form 5500) and accompanying schedules;

d. Notifications regarding changes in plan administration;

e. A full current ERISA-compliant benefit statement confirming eligibility and quantifying the benefit payable to the Estate.

41. On October 31, 2025, Plaintiff sent a third formal written request via Certified Mail and email to PNC and WTW, enclosing a demand letter requesting all previously requested documents and a final determination regarding the Estate's entitlement to the pension benefit. The letter reiterated all nine categories of requested documents and set a deadline of November 10, 2025, for full disclosure, warning that failure to respond would result in the filing of an ERISA lawsuit.

42. On December 11, 2025, George Baer of PNC HR Benefits Administration notified Plaintiff's counsel by email: "[F]ollowing the review of Mary's record it has been determined that no retirement benefit is payable."

43. Mr. Baer stated that Decedent's benefit accrued under the Midlantic Retirement Plan "requires that if a participant does not commence their benefit prior to death, payment is only made to a surviving spouse. Since Mary did not commence her benefit before passing and there is no surviving spouse, no benefit is due to Mary's estate."

44. Mr. Baer cited Section 6.01 and 6.04 of the Midlantic Pension Plan Document and page 15 of the Midlantic Plan SPD. Mr. Baer acknowledged that this determination had not been included in the original response. He stated that if Plaintiff believed the determination was inaccurate, Plaintiff had a right to an appeal under the PNC Pension Plan Claims Appeal Process.

45. The December 11, 2025 communication constitutes Defendants' formal denial of benefits, from which date the right to appeal and the right to file suit under ERISA Section 502(a)(1)(B) arose.

46. On December 4, 2025 (prior to the December 11 denial), Plaintiff's counsel had asked Defendants: (1) the reason for the reduction in the lump-sum amount between the 2021 benefit statement ($156,047.90) and the 2025 benefit statement ($154,430.58); (2) a current benefit statement indicating the current benefit amount; and (3) the proper procedure and documentation required to formally request a lump sum payout to the Estate. None of these questions were answered.

47.     On March 10, 2026, Plaintiff's counsel responded to the December 11, 2025 denial, contending that under ERISA Section 208, 29 U.S.C. § 1058, PNC, as the successor plan administrator and sponsor, assumed all obligations of the predecessor plan and that the anti-forfeiture provisions of ERISA protect the Decedent's vested benefit from forfeiture. Plaintiff's counsel specifically requested: (a) a copy of the Continental Bank Pension Plan document that was merged or transferred into the Midlantic Plan; (b) the PNC Pension Plan document itself (as distinguished from the SPD); and (c) copies of notifications provided to participants regarding changes in plan administration and the specific plan provisions relied upon by Defendants.

48.     On April 10, 2026, Plaintiff's counsel sent a final demand letter to Defendants, setting a deadline of April 24, 2026, to receive the full disclosure and an administrative resolution, and warning that failure to respond would result in an ERISA lawsuit. No substantive response was received from Defendants by that deadline.

49.     As of the date of filing this Complaint, Defendants have still not produced: (a) the PNC Pension Plan document itself; (b) the Continental Bank Pension Plan document; (c) the Plan's complete Form 5500 for any year; (d) the notifications regarding changes in plan administration; (e) a full ERISA-compliant benefit statement confirming eligibility and quantifying the benefit payable to the Estate; or (f) any response to the specific questions posed by Plaintiff's counsel on December 4, 2025, and March 10, 2026.

**V. CLAIMS FOR RELIEF**

### COUNT I — CLAIM FOR BENEFITS UNDER ERISA SECTION 502(a)(1)(B)
### (Against All Defendants)

50.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

51.     ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary to bring a civil action to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan, or to clarify rights to future benefits under the terms of a plan.

52.     Where, as here, the plan administrator has discretionary authority to construe the terms of the plan and determine eligibility for benefits, a court reviews the administrator's decision under the arbitrary and

capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under that standard, a denial of benefits is upheld only if it is reasonable and supported by substantial evidence in the record. An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993).

53.     Even under the deferential arbitrary and capricious standard, a plan administrator acts arbitrarily and capriciously when it: (i) fails to engage in a reasoned analysis of the relevant plan provisions; (ii) ignores or fails to produce the governing plan document; (iii) relies on superseded or inapplicable plan provisions while withholding the controlling document; (iv) applies a plan forfeiture provision that is inconsistent with ERISA's anti-forfeiture requirements; or (v) provides a denial that is inconsistent with the plan's own representations to the participant.

54.     For the reasons set forth in paragraph 57 below, Defendants' December 11, 2025 denial of benefits was arbitrary and capricious under each of these criteria, independently and collectively.

55.     The Decedent, Mary Claire McGrory, was a vested participant in the Continental Bank pension plan, which was successively merged into the Midlantic Retirement Plan and then into the PNC Financial Services Group, Inc. Pension Plan. PNC confirmed her vested status in each of two written benefit estimate statements. The most recent estimate, effective April 1, 2025, shows a vested lump-sum benefit of $154,430.58 and a single life annuity of $1,195.10 per month attributable to the Decedent's Midlantic Retirement Plan benefit.

56.     Defendants denied any benefit to the Estate of Mary Claire McGrory on December 11, 2025, on the sole ground that: (a) Decedent did not commence her benefit before her death; and (b) there is no surviving spouse.

57.     Defendants' reliance on Section 6.01 and 6.04 of the Midlantic Retirement Plan to support this denial is improper for the following reasons:

a. ERISA Section 208, 29 U.S.C. § 1058, requires that upon any merger, consolidation, or transfer of plan assets or liabilities, each participant must receive a benefit immediately after such transaction that is at least equal to the benefit that participant would have received immediately before such transaction. To

the extent that Defendants applied any plan provision that would result in the Estate receiving nothing — a forfeiture of more than $150,000 in accrued benefits — that application violates ERISA Section 208 and must be set aside.

b. ERISA's vesting and anti-forfeiture provisions (Sections 203 and 206, 29 U.S.C. §§ 1053 and 1056) protect accrued, vested benefits from forfeiture upon any condition other than the participant's death before the annuity starting date, and only then if the joint and survivor annuity and pre-retirement survivor annuity rules have been properly satisfied. To the extent Decedent's benefits would otherwise be forfeited solely because she was not married, this constitutes an impermissible condition of forfeiture that violates ERISA.

Specifically, ERISA Section 203(a), 29 U.S.C. § 1053(a), provides that a vested benefit may not be forfeited except in the case of a participant's death before the annuity starting date, and only then to the extent permitted by the joint and survivor annuity requirements of ERISA Section 205, 29 U.S.C. § 1055. ERISA Section 205 provides the mechanism for post-death forfeiture of vested benefits solely through the Qualified Pre-Retirement Survivor Annuity ("QPSA") — a survivor annuity payable to a surviving spouse. Because the Decedent, Mary Claire McGrory, was never married and had no surviving spouse, the QPSA provisions of ERISA Section 205 are entirely inapplicable to her. It follows that the § 203(a) forfeiture exception — which is conditioned upon satisfaction of the § 205 survivor annuity requirements — never arises. Where, as here, the statutory pre-condition for a lawful pre-commencement forfeiture (i.e., a surviving spouse capable of receiving a QPSA) does not exist, ERISA's anti-forfeiture provisions operate to protect the entire accrued benefit from extinguishment. Defendants cannot avail themselves of the § 203(a) forfeiture exception for a participant to whom the § 205 mechanism, by its terms, does not apply. The application of Midlantic Plan Sections 6.01 and 6.04 to forfeit this benefit in its entirety therefore violates ERISA as a matter of law.

c. The Midlantic Retirement Plan was incorporated into the PNC Financial Services Group, Inc. Pension Plan, and PNC's own pension plan documents and the 2024 PNC Pension Plan SPD govern the current administration of this benefit. Defendants have not produced the current governing PNC Pension

12

Plan document. If the current PNC Pension Plan document provides for death benefits payable to an estate in the absence of a surviving spouse, Defendants' reliance on the Midlantic provisions is in error.

d. Defendants' April 1, 2025 benefit estimate statement offered the Decedent two payment forms: (1) a Lump Sum valued at $154,430.58; and (2) a Single Life Annuity of $1,195.10 per month. A Single Life Annuity is by definition a benefit payable for the participant's life only, without provision for any surviving spouse and without requiring marital status as a condition of payment. The inclusion of a Single Life Annuity as an available payment option in Defendants' own benefit estimate — sent just eight days before the Decedent's death — constitutes an affirmative representation that the benefit was payable to and for the Decedent individually. This representation was consistent with Defendants' January 1, 2021 benefit estimate, which made the same two payment options available to the Decedent. A plan participant who receives benefit estimates offering a Single Life Annuity is reasonably entitled to rely on those estimates as confirming that the benefit is payable to her individually. The doctrine of equitable estoppel under ERISA, see *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 235–36 (3d Cir. 1994), precludes Defendants from denying benefit eligibility after issuing representations — twice over a four-year period — that the benefit was available in a form requiring no surviving spouse.

e. ERISA Section 206(d)(1), 29 U.S.C. § 1056(d)(1), provides that each pension plan shall provide that benefits provided under the plan may not be assigned or alienated. While this provision protects against alienation, it also reinforces that accrued benefits are inalienable property rights of participants and their estates that cannot be conditioned on factors (such as marital status) that ERISA does not permit.

f. DENIAL WITHOUT REFERENCE TO THE GOVERNING PLAN DOCUMENT IS ARBITRARY AND CAPRICIOUS: The benefit now at issue originated under the Continental Bank pension plan, which was the plan in effect during the Decedent's nearly twenty years of employment with Continental Bank from July 1973 through March 1993. To the extent that the Continental Bank plan and not the Midlantic Retirement Plan is the operative governing document for purposes of determining the Decedent's accrued benefit rights, the terms of that plan control the threshold questions of vesting, forfeiture conditions, and survivor benefit eligibility. Plaintiff, through counsel, specifically requested production of

13

the Continental Bank Pension Plan document on March 10, 2026, and again on April 10, 2026. As of the date of this Complaint, Defendants have not produced the Continental Bank Pension Plan document, nor have they represented that they do not possess it, nor have they identified any provision of that document that supports the denial. A plan administrator acts arbitrarily and capriciously when it denies benefits without producing the governing plan document and specifically referring to pertinent plan provisions. *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997). The Administrative Committee's failure to identify, consult, or produce the Continental Bank Pension Plan document, while simultaneously relying on provisions of the Midlantic Retirement Plan to extinguish the Decedent's accrued benefit, renders the denial arbitrary and capricious on its face.

58.     As a result of Defendants' wrongful denial of benefits, the Estate of Mary Claire McGrory has been deprived of retirement benefits with a lump-sum value of at least $154,430.58 as of April 1, 2025, plus interest accruing thereafter.

59.     Plaintiff is entitled to recover from Defendants, jointly and severally, all benefits owed to the Estate of Mary Claire McGrory under the terms of the governing plan and ERISA, plus pre-judgment interest at the applicable federal rate.

60.     Plaintiff is also entitled to an order directing Defendants to produce all plan documents requested and to provide a complete and transparent accounting of how the Decedent's accrued benefit was calculated and why the benefit reportedly declined between January 1, 2021 ($156,047.90) and April 1, 2025 ($154,430.58).

### COUNT II — BREACH OF FIDUCIARY DUTY UNDER ERISA SECTION 502(a)(3)
### (Against the Administrative Committee and WTW)

61.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

62.     ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain appropriate equitable relief to redress violations of ERISA or of the terms of a plan, or to enforce the provisions of ERISA or of the terms of a plan.

63.     ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that each fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, with the care, skill, prudence, and diligence of a prudent person.

64.     Defendants, as plan fiduciaries, breached their fiduciary duties to the Decedent and her Estate in the following respects:

a. FAILURE TO NOTIFY: Defendants failed to notify the Decedent during her lifetime that her pension benefit would be forfeited if she did not commence benefits by her Normal Retirement Date of January 1, 2021. ERISA's fiduciary duty requires plan administrators to take affirmative steps to ensure that participants receive the information necessary to protect their benefit rights. The failure to notify the Decedent — who was only 65 years old on her NRD and who had a vested benefit of over $150,000 — that she needed to commence her benefit to avoid forfeiture constitutes a breach of fiduciary duty.

b. FAILURE TO DISTRIBUTE ON NRD: ERISA Section 206(a)(1), 29 U.S.C. § 1056(a)(1), requires that pension plans provide that benefits of each participant will commence no later than the 60th day after the latest of (i) the close of the plan year in which the participant attains normal retirement age, (ii) the close of the plan year in which occurs the 10th anniversary of plan participation, or (iii) the close of the plan year in which the participant terminates service with the employer. Defendants failed to automatically commence or to notify the Decedent that her benefits should have commenced no later than January 1, 2021, or to make arrangements to commence benefits at that time.

c. FAILURE TO SEARCH FOR AND NOTIFY PARTICIPANT: Defendants failed to use reasonable efforts to locate the Decedent and inform her that her benefits were due to commence. A reasonable, prudent fiduciary would have attempted to contact the Decedent at or around her Normal Retirement Date to inform her that her benefits were vested and must be commenced.

d. FAILURE TO RESPOND TO INQUIRIES: As set forth above, Defendants repeatedly failed to respond to Plaintiff's written requests within the timeframe required by ERISA. The delay of more than 60

days before making any partial response to the August 11, 2025 request, and the continued failure to produce all requested documents and information, breached Defendants' fiduciary obligations.

e. FAILURE TO PRODUCE COMPLETE PLAN DOCUMENTS: Defendants denied benefits to the Estate based on provisions of the Midlantic Retirement Plan, while withholding: (i) the Continental Bank Pension Plan (the original plan under which benefits accrued); (ii) the current PNC Pension Plan document (the controlling plan document); and (iii) any notifications sent (or not sent) to the Decedent regarding her benefit commencement obligations. Without these documents, Plaintiff cannot meaningfully evaluate or challenge the basis for the denial.

f. INADEQUATE CLAIMS PROCEDURE: Defendants' December 11, 2025 denial letter failed to provide the detailed explanation of the specific plan provisions on which the denial was based, as required by ERISA's mandatory claims regulations at 29 C.F.R. § 2560.503-1. A proper denial notice must include the specific reason or reasons for denial, specific references to plan provisions on which the denial is based, a description of any additional material or information necessary for the participant to perfect the claim, and a description of the plan's review procedures.

65.    The equitable relief sought in this Count is directed at injuries to the Decedent and her Estate that are distinct from and not fully compensable by the payment of accrued benefits under Count I. Specifically: (a) The failure to notify the Decedent during her lifetime of her benefit commencement obligation — a breach that occurred before her death and caused the loss of the opportunity to elect a payment form and receive benefits during her lifetime — is a harm to the Decedent personally for which retroactive payment to the Estate is not a complete remedy; (b) The costs of this litigation, including attorneys' fees incurred in pursuing the Estate's rights against Defendants who denied benefits while withholding the governing plan documents, represent a category of harm independently attributable to Defendants' fiduciary breaches and not compensated by any award of benefits under Count I; and (c) The equitable surcharge available under ERISA Section 502(a)(3) following *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011), provides a remedy for the injury caused by Defendants' breach of their duty to inform — specifically, the monetary loss attributable to interest and growth that would have accrued had benefits been timely commenced on or

about January 1, 2021, some four years before the Decedent's death. This distinct harm — approximately four years of lost benefit enjoyment and investment — is not recoverable under § 502(a)(1)(B), which provides only for the benefit as calculated, not the full make-whole equitable remedy for a fiduciary's prolonged failure to act.

66.    As a result of Defendants' breaches of fiduciary duty, the Estate of Mary Claire McGrory has been deprived of retirement benefits of at least $154,430.58, plus interest, and has incurred legal fees and expenses in pursuing these benefits.

67.    Plaintiff is entitled to equitable relief including, but not limited to:

a. An order surcharging Defendants for losses caused by their fiduciary breaches;

b. An order requiring Defendants to produce all plan documents, records, and communications concerning the administration of the Decedent's benefit and the Plan's procedures for notifying participants of their benefit commencement obligations;

c. An order reforming the Plan's benefit denial determination to conform to ERISA's anti-forfeiture and survivor benefit requirements;

d. Any other equitable relief the Court deems appropriate.

### COUNT III — STATUTORY DOCUMENT PENALTIES UNDER ERISA SECTION 502(c)(1)
#### (Against the Administrative Committee as Plan Administrator; and
#### Against WTW as Agent of the Plan Administrator)

68.    Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

69.    ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), requires that, upon written request, a plan administrator shall furnish to any plan participant or beneficiary (and to the estate of a deceased participant) any documents filed with the Secretary of Labor, including plan descriptions, plan documents, annual reports, and other instruments under which the plan is established or operated.

70.    ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1), provides that any administrator who fails or refuses to comply with a request for information required to be furnished to a participant or beneficiary within 30 days of such request shall be personally liable to such participant or beneficiary in the amount of

up to $110 per day (as adjusted by 29 C.F.R. § 2575.502c-1) from the date of such failure or refusal, in addition to such other relief as the court may order.

71.     With respect to Defendant Willis Towers Watson US LLC ("WTW"), Plaintiff's claim for document penalties under ERISA Section 502(c)(1) is based not on a theory of *de facto* plan administration, but on WTW's status as an agent to whom the Plan Administrator (in this case, the Administrative Committee), delegated its document-response function for purposes of the written requests at issue. As reflected in WTW's September 23, 2025 response to Plaintiff's August 11, 2025 document request, WTW: (a) received Plaintiff's certified mail request; (b) communicated with Plaintiff on behalf of the Plan in response to that request; and (c) represented that it had "taken instructions from our client, PNC," regarding the response — thereby confirming that it was acting as the functional vehicle through which the Plan Administrator was managing its response (or non-response) to Plaintiff's document demand. To the extent WTW was acting as the agent of the Plan Administrator in managing the document response process, WTW is subject to the document-penalty provisions of § 502(c)(1) by virtue of that agency. See 29 C.F.R. § 2575.502c-1 (daily penalty applicable to administrators who fail to comply with written requests); *Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund*, 933 F.3d 257 (3d Cir. 2019) (§ 502(c)(1) liability flows to the designated administrator or its agent — the Court expressly preserved agency-based theories while rejecting de facto administrator status for unrelated third parties). The distinction is critical: WTW was not a stranger to these requests who happened to be contacted by mistake. WTW affirmatively inserted itself into the response chain, communicated on behalf of PNC, and confirmed its agency — then deflected without producing a single document. That conduct falls within the scope of administrator-agent liability under § 502(c)(1).

72.     Plaintiff, as Administrator of the Decedent's Estate, is entitled to request and receive documents on behalf of the Decedent/participant as if Plaintiff were the participant or beneficiary for purposes of ERISA Section 104(b)(4) and 502(c)(1).

73.     Plaintiff's written requests of August 11, 2025, September 24, 2025, and October 31, 2025 each satisfied the "clear notice" standard required for § 104(b)(4) document requests under *Kollman v. Hewitt*

18

*Associates*, LLC, 487 F.3d 139, 146 (3d Cir. 2007). Specifically, the August 11, 2025 letter: (a) identified the Decedent by name and Social Security number; (b) explicitly invoked ERISA § 104(b)(4) and § 502(c)(1) by name; (c) itemized nine specific categories of required documents including plan documents, SPD, annual reports, benefit statements, and administrator contact information; and (d) enclosed the Decedent's death certificate and Letters of Administration. Under *Kollman*, the touchstone is whether the administrator "knew or should have known which documents were being requested." 487 F.3d at 146. Defendants' partial production on October 15, 2025 — which included several of the exact categories of documents itemized in the August 11, 2025 letter — confirms that Defendants did in fact understand which documents were being requested. Their selective production of some documents while withholding others is not a failure of notice; it is a deliberate partial response, which is precisely the scenario § 502(c)(1) addresses.

74.     Defendants failed to respond to at least three separate written requests for plan documents within the 30-day statutory deadline:

> a. First Request: August 11, 2025 (30-day deadline: September 10, 2025)
>
> b. Second Request: September 24, 2025 (30-day deadline: October 24, 2025)
>
> c. Third Request: October 31, 2025 (30-day deadline: November 30, 2025)

75.     The following specific documents were requested on August 11, 2025 and were not produced within 30 days (i.e., by September 10, 2025), and for each document, the penalty accrues at \$110 per day from September 11, 2025:

> DOCUMENT 1: The Midlantic Pension Plan document, first provided October 15, 2025 (35-day delay) = \$110 × 35 = \$3,850.00.
>
> DOCUMENT 2: The Midlantic Pension Plan SPD, first provided October 15, 2025 (35-day delay) = \$110 × 35 = \$3,850.00.
>
> DOCUMENT 3: The PNC Pension Plan SPD, first provided October 15, 2025 (35-day delay) = \$110 × 35 = \$3,850.00.
>
> DOCUMENT 4: PNC Financial Services Group, Inc. Pension Plan document itself — never produced = \$110 × 307 days = \$33,770 through July 15, 2026, plus \$110/day ongoing.
>
> DOCUMENT 5: The Plan's Annual Report (Form 5500) — never produced = \$110 × 307 days = \$33,770 through July 15, 2026, plus \$110/day ongoing.

DOCUMENT 6: Current ERISA-compliant Benefit Statement — never produced = $110 × 307 days = $33,770 through July 15, 2026, plus $110/day ongoing.

DOCUMENT 7: All other documents needed to determine entitlement (including, notifications to participants, rollover election forms, etc.) — never produced = $110 × 307 days = $33,770 through July 15, 2026, plus ongoing.

76.     Based on the foregoing, Plaintiff estimates that document penalties accrued through July 15, 2026 (the date of the above calculation) are at least $146,630.00, and continuing penalties of at least $440 per day (representing $110/day × at least 4 documents that have never been produced) accrue after that date.

77.     Plaintiff respectfully requests that this Court impose the maximum statutory penalty of $110 per day per document against Defendants, jointly and severally, for each and every day that each requested document was or remains unproduced.

78.     In determining whether to impose the maximum penalty, the Court should consider that: (a) Defendants' delay was systemic and not isolated; (b) Defendants denied benefits worth over $154,000 while withholding the very documents that would enable Plaintiff to evaluate the denial; (c) Defendants continued to withhold documents even after multiple formal written requests, certified mail deliveries, and the notification of intent to file suit; and (d) WTW, as Defendants' actuary and agent, acknowledged receipt of the requests and simply deflected without producing any documents.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff James G. McGrory, Administrator of the Estate of Mary Claire McGrory, respectfully prays that this Court enter judgment in his favor and against Defendants as follows:

A. On Count I (Claim for Benefits):

1. A declaration that the Estate of Mary Claire McGrory is entitled to receive the full accrued pension benefit under The PNC Financial Services Group, Inc. Pension Plan, including all benefits that accrued under the Continental Bank pension plan and successors thereto;

2. An order directing Defendants to pay to the Estate of Mary Claire McGrory the lump-sum value of Decedent's vested pension benefit, which as of April 1, 2025, was estimated to be at least $154,430.58, plus pre-judgment interest thereon at the applicable federal rate from the date Decedent should have commenced her benefits (no later than January 1, 2021) through the date of payment;

B. On Count II (Breach of Fiduciary Duty):

1. Appropriate equitable relief under ERISA Section 502(a)(3) to remedy Defendants' fiduciary breaches including an equitable surcharge against Defendants as determined by the Court;

2. An order requiring Defendants to produce and make available to Plaintiff all plan documents, records, and communications relating to the administration of the Decedent's benefit, and the Plan's procedures for notifying participants of their benefit commencement obligations;

3. An order reforming the Plan's benefit denial determination to conform to ERISA's anti-forfeiture and survivor benefit requirements;

4. Any other equitable relief the Court deems appropriate.

C. On Count III (Document Penalties):

1. An order imposing statutory document penalties against the Plan Administrator Defendants, The Administrative Committee and WTW, accrued through July 15, 2026 in the sum of at least $146,630.00, plus continuing penalties thereafter of at least $440 per day (representing $110/day × at least 4 documents that have never been produced) through the date of judgment.

D. On All Counts:

1. An award of reasonable attorneys' fees and costs of this action pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1);

2. Pre-judgment interest on all amounts awarded at the applicable federal rate;

3. Such other and further relief as this Court deems just, equitable, and appropriate.

Respectfully submitted,

**BERMAN LEGAL LLC**
/s/Kenneth D. Berman, Esquire
230 South Broad Street, Suite M-30
Philadelphia, Pennsylvania 19102
Telephone: (215) 546-8800
Email: kberman@kdblegal.com
Counsel for Plaintiff

Dated: July 20, 2026

21